Christopher H. Kent, OSB #85253
Email: ckent@kentlaw.com
**Leslie S. Johnson, OSB #95472**
Email: ljohnson@kentlaw.com
**KENT & JOHNSON, LLP**
1500 SW TAYLOR STREET
PORTLAND, OREGON 97205
TELEPHONE: (503) 220-0717
FACSIMILE: (503) 220-4299
Attorney(s) for Plaintiff

FILED'05 JUN 30 10:22USDC-ORM

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ROBERT M. BLACK and DOROTHY L. BLACK, Trustees of the BLACK REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>KOGAP ENTERPRISES, INC.; CRAIG LAUSMANN; WILLIAM ADAMS; and JOHN DOES 1-12,<br><br>Defendants. | No. 05-3053-CO<br><br>**COMPLAINT**<br><br>**(SECURITIES FRAUD; COMMON LAW FRAUD)**<br><br>**DEMAND FOR JURY TRIAL** |

For their complaint, Plaintiffs allege as follows:

**Jurisdiction, Parties, and Venue**

1.

At all material times, Plaintiffs are and were California residents.

2.

At all material times, Defendant KOGAP Enterprises, Inc. ("KOGAP") was and is an Oregon corporation with its principal place of business in Jackson County, Oregon and a seller, control person, participant, and / or aided and abetted in the unlawful sale of securities as alleged herein in violation of ORS 59.115.

PAGE 1 – COMPLAINT

3.

At all material times, Defendant Craig Lausmann was and is an Oregon resident and a seller, control person, participant, and / or aided and abetted in the unlawful sale of securities as alleged herein in violation of ORS 59.115.

4.

At all material times defendant William Adams ("Adams") was and is an Oregon resident and a seller, control person, participant, and / or aided and abetted in the unlawful sale of securities as alleged herein in violation of ORS 59.115.

5.

At all material times, John Doe Defendants 1-12, are former and / or current officers, directors, or others who are sellers, control persons, participants, and / or aided and abetted in the unlawful sale of securities as alleged herein in violation of ORS 59.115, *et.seq.*.

6.

Diversity jurisdiction exists because the plaintiff is a resident of the state of California and all the defendants are Oregon residents; and the matter in controversy exceeds, exclusive of interest and costs, the sum specified in 28 U.S.C. § 1332.

**FIRST CLAIM**

**(Securities Fraud)**

7.

In or about January, 2001 KOGAP purchased Southern Oregon Composite Industries, LLC, dba Rogue Rods ("SOCI"). At the time of the purchase, Defendant

PAGE 2 – COMPLAINT

Lausmann was President of KOGAP and hired Defendant Adams to be general manager of SOCI.

8.

On or about June 29, 2001, Defendant Lausmann formed Advanced Rods, Inc. (ARI") which purchased SOCI's assets from KOGAP. Defendant Lausmann paid for the assets through redemption of his KOGAP Class B stock. The sale agreement with KOGAP provided that Defendants Lausmann and Adams would continue to be employed by, and receive salaries from, KOGAP for a period of five years. At all material times Defendant KOGAP controlled the actions of Defendants Lausmann and Adams.

9.

ARI was formed to manufacture and sell fly fishing rods and related equipment. ARI quickly developed cash flow problems and began to seek outside financing, or investment capital.

10.

In October, 2002, ARI contracted with Dale R. Siens Registered Investment Advisor, P.C. ("Siens") for the purpose of obtaining investors.

11.

In or about January of 2003, Defendants caused to be provided and circulated various information, materials and representations to Siens to solicit investment capital into ARI. Siens was engaged under contract with ARI to act as an investment banker. In connection with his services as investment banker Siens gathered various financial

PAGE 3 – COMPLAINT

information produced by defendants that he and investors, including plaintiffs, would rely on in making their investment decisions.

12.

In November 2002, a sales summary was generated for Umpqua Bank to show large sales from July 2, 2002 to November 21, 2002. ARI had only been operational for part of the year 2002 under the new management. Sales were stated to be a total of $733,312.00, which was represented and considered to be an excellent performance because this was the slowest time of the year and further represented approximately 58% of the necessary growth amount for a breakeven point for the company.

13.

In January 2003, ARI provided Umpqua Bank and plaintiffs' representative and investment advisor a three ring binder of financial and marketing information. This information was offered as part of solicitation of investments, including the plaintiffs' investment. This information was given to induce investors and created to show the viability of the company, the product and the market.

14.

The three ring binder contained a breakeven analysis and pro forma. These financial disclosures were key analytical tools in satisfying investor requirements, but as later discovered, contained numerous material misrepresentations and omissions.

15.

In January 2003, Siens and Umpqua Bank requested ARI's 2002 tax returns or at a minimum other financial data. Defendants Lausmann and Adams represented that the

PAGE 4 – COMPLAINT

raw data was not available because the data was with ARI's accountant and that the 2002 tax returns were not completed, and only the 2001 tax returns were available. Throughout 2003, Lausmann and Adams continually represented that the 2002 tax returns were not completed and that the company accountants had extended the filing date. As later discovered, these representations were false.

16.

In January 2003, Defendants Lausmann and Adams represented that they were not taking any salaries from ARI. They stated that they wanted the potential investors to know that their investments would be used to increase inventory sales, not salaries for insiders; this was done specifically to "gain investor confidence" with Rogue Rods. As later discovered these representations were false.

17.

In January 2003, Defendants Lausmann and Adams represented that they had invested over $800,000 in the company. As evidence of this investment, Adams produced copies of ten Lausmann demand notes, totaling $542,000. As later discovered, this representation was false.

18.

At or about this time, defendant Adams produced another executive summary for the Rogue Rods investment stating that Rogue Rods had a good year in 2002 with sales exceeding $1 million. As later discovered, these representations, in light of the circumstances under which they were made, were misleading.

**PAGE 5 – COMPLAINT**

19.

In January 2003, Defendant Lausmann telephoned Plaintiff Robert Black to confirm to him that plaintiffs' investment would be used to satisfy sale orders.

20.

In reliance on the representations made to plaintiffs as alleged in paragraphs 11-18 above, Plaintiffs invested $200,000 into ARI in two installments of $100,000 each on February 4, 2003 and February 10, 2003.

21.

On or about February 13, 2003, three days after Plaintiffs had paid their second installment, ARI's CPA signed the 2002 tax returns reporting a loss of $621,075. This was unknown to the plaintiffs, and in fact directly contradictory to the Defendants' representations of profitability. Defendants were aware of these losses and aware of the representations being made to plaintiffs and other investors.

22.

Also, on the same day, February 13, 2003, Defendant Adams made manual 2002 adjustments by adding descriptions of note receivables for Craig Lausmann $334,430 and note payable – C. Lausmann $350,353. No evidence exists that this money infusion ever occurred.

23.

On or about February 13, 2003, Defendant Adams produced an income statement for 2001 and 2002 dated February 13, 2003. These income statements reported losses for 2002 of approximately $611,000, however, neither the tax return reported loss, nor was

**PAGE 6 – COMPLAINT**

KENT & JOHNSON, LLP
1500 SW Taylor Street
Portland, Oregon 97205
(503) 220-0717

the income statement loss disclosed to Plaintiffs and in fact, it had been represented to plaintiff and his representatives that the company was profitable.

24.

In May, 2003, Defendant Adams issued many income statements reporting that ARI was financially strong.

25.

In or about September 2, 2003, Defendant Adams distributed a business plan supplement praising the company and its financial success and boasting of its new advanced technology products. Documents failed to disclose ARI's losses and bogus loans described herein.

26.

In or about October 2003, contrary to their previous representations, Defendants Lausmann and Adams began drawing salaries and receiving other benefits from the company.

27.

Unaware of the various financial and securities fraud committed by Defendants, Plaintiffs advanced a bridge loan of $50,000 into Rogue Rods on or about November 12, 2003 and another $50,000 on or about December 1, 2003. These loans and the initial investment of $200,000 constitute securities pursuant to Oregon law. The loans were evidenced by a Promissory Note, which on its face gave Plaintiffs the right to initiate a stock conversion for common or preferred stock ownership in ARI (a copy of this document is attached hereto as Exhibit A, and incorporated by reference). Defendants

**PAGE 7 – COMPLAINT**

KENT & JOHNSON, LLP
1500 SW Taylor Street
Portland, Oregon 97205
(503) 220-0717

also represented that the investment would be secured by a security agreement on ARI's assets.

28.

On or about November 2003, Bobby Loomis, an ARI technical design engineer, had a disagreement with Defendant Adams concerning Defendant Adams' revelation that the company was losing significantly money. Loomis expressed his concerns to Siens.

29.

In response to this concern, on or about November 21, 2003, Siens made an unannounced visit to ARI. He observed that there was low work in progress, low finished goods inventory, in light of the claimed product expenses. Siens asked the bookkeeper for financial statements and was given the balance sheet and income statements dated November 21, 2003. The financial statements established that the 2003 loss was $463,675. This was the first notice that there was significant and unexplained losses had occurred in the year 2003, contrary to the representations made by Defendants.

30.

Thereafter, Siens asked for and received additional reports for January through November 2003. Examination of these reports stated differing operating numbers than were previously produced for those months. Noticing the large discrepancies and what would seem to be a change in loss numbers, Siens requested access to the financial computer systems with the intent of auditing the company.

31.

The very next day following Siens' requests, Defendant Adams worked at the ARI offices by himself.

32.

Thereafter, and immediately following Siens' request to access the financial computer records, and following Defendant Adams' weekend visit to the company, on Monday, November 24, 2003, Defendant Adams reported that the main computer system crashed and that all the 2001 and 2002 financial information and the August and November 2003 financial information was lost.

33.

Siens immediately hired a computer consultant to visit ARI to recover allegedly lost data. The computer consultant reported that all the tax years 2001 and 2002 were permanently lost. The consultant also confirmed that the financial information from August to November 2003 was also missing. The consultant was unable to provide a reason from a hardware perspective of why the data files were allegedly lost. The consultant also reported that the same problem of missing data existed in the computer back-up system. There was no explanation of this because the back-up system was a stand alone system, completely isolated from the main system.

34.

Defendant Adams began to rebuild the August to November 2003 operating data. Siens later discovered that defendant Adams was not interviewing or hiring personnel to

**PAGE 9 – COMPLAINT**

KENT & JOHNSON, LLP
1500 SW Taylor Street
Portland, Oregon 97205
(503) 220-0717

input the data but was making journal entries himself. Siens demanded that employees be hired to enter the source data.

35.

In December, 2003 Siens conferred with Defendant Lausmann and requested that Siens be able to review the 2002 and 2003 check registers and deposit slips. Defendant Defendant Lausmann originally agreed with this request, but after discussing the matter with Defendant Adams, refused to allow access to the data.

36.

In or about December 2003, sales representatives for the company reported to Siens that Defendant Adams had stated that ARI was profitable but the company had not received any money from investors and because no cash infusions had occurred, production was low at the end of 2003. The sale representative reported that there had been huge amounts of orders pending for the company and that sales representatives had not been paid since July 2003. Plaintiffs' investment had supposedly been earmarked for completing the orders and generating revenue.

37.

Thereafter, Defendant Lausmann announced that Defendant Adams was quitting ARI at the end of December 2003.

38.

In January 2004, Siens repeated his request for examination of the checkbook registers, deposit slips and was again refused access to this material by Defendants

**PAGE 10 – COMPLAINT**

Lausmann and KOGAP. At this point in time, Siens was suspicious that embezzlement of company funds had taken place.

39.

Contrary to the December 2003 announcement, Defendants Lausmann and KOGAP retained Defendant Adams with the company continuing to provide defendant Adams with access to the financial computer systems.

40.

On or about January 20, 2004, Siens visited the company and received various income statements. One such statement dated January 19, 2004 stated that the 2003 loss exceeded $500,000. A second statement dated January 20, 2004 contained hand written adjustments to the operating accounts that changed the printed loss from $513, 000 to $610,000. This would total in excess of $1.2 million in losses in a reporting period of eleven months.

41.

On or about March 18, 2004, ARI filed a Chapter 11 bankruptcy proceeding. ARI's assets were sold to Bud Kaufman, Defendant Lausmann's father-in-law, who then created a company called Rogue Rods, Inc. Plaintiffs have lost their entire principal investment of $316, 293.

42.

In December 2004 Siens met with Sandra Sawyer, KOGAP's general manager and legal counsel. She affirmed on behalf of KOGAP that Defendant Adams was still, at that time, a KOGAP employee and his responsibility was to insure the financial stability

PAGE 11 – COMPLAINT

KENT & JOHNSON, LLP
1500 SW Taylor Street
Portland, Oregon 97205
(503) 220-0717

of ARI on behalf of KOGAP. She stated that she intended to fire Defendant Adams and also stated that KOGAP would refund plaintiff his investment.

43.

The investments made by Plaintiffs were induced by means of false and misleading statements described in paragraphs 10 through 42 above. Defendants' conduct violates Oregon's Securities Fraud Statute, ORS 59.115, *et seq*. Defendants made the following material misrepresentations and / or failed to disclose material facts:

 a. The 2002 tax returns, with the financial data were available for review;

 b. The company CPA had not extended the filing date into 2003 as represented;

 c. The Tax returns in fact disclosed significant losses for the company as described in paragraphs 21 – 23 above, which was directly contrary to the strong financial condition of the company as reported to plaintiffs;

 d. Statements by Defendants Lausmann and Adams that they did not intend to take salaries from ARI was false;

 e. The representations that Defendant Lausmann and Kaufmann invested over $800,000 in the company was materially false; and in fact, Defendant Lausmann later admitted in the company's bankruptcy litigation that the Lausmann demand notes of $542,000 were bogus;

 f. Defendant Adams' representation in the executive summary that ARI had a good year in 2002 was false;

**PAGE 12 – COMPLAINT**

g.  The representation by Defendant Lausmann that the sales orders that had been placed but not filled by the company could be satisfied with plaintiff's $200,000 investment was false.

h.  Defendants falsely represented that Plaintiffs' investment would be covered by a security agreement.

45.

As a direct result of Defendants' material misrepresentations and/or material omissions, Plaintiffs were damaged in the amount of $300,000 plus pre-judgment interest from the dates of the investments, totaling $75,686 as of June 15, 2005, plus attorney fees of $30,000 incurred as a direct result of Plaintiffs' unsuccessful attempt to establish the promised security interest in ARI's assets.

46.

Pursuant to ORS 59.115(10), the court should award Plaintiffs' reasonable attorney fees incurred in this case.

## SECOND CLAIM

## (Fraud)

47.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 above. Defendants either directly, or through an agent, made the foregoing false and misleading statements of material fact to plaintiffs with the intent that plaintiff would rely on those statements.

PAGE 13 – COMPLAINT

48.

When they made those false and misleading statements, Defendants knew that they were false and misleading, or recklessly disregarded whether they were false or misleading.

49.

Plaintiffs relied on the false and misleading statements, and did not know that the statements were false and misleading and had a right to rely on said representations because of the business relationship of the parties.

50.

As a direct result of the material misrepresentations and omissions, Plaintiffs were damaged in the amount of $300,000 plus pre-judgment interest from the dates of the investments, totaling $75,686 as of June 15, 2005, plus attorney fees of $30,000 incurred as a direct result of Plaintiffs' unsuccessful attempt to establish the promised security interest in ARI's assets.

51.

Defendants' conduct was intentional, willful and reckless and in direct disregard of the law. Plaintiffs are entitled to the recovery of punitive damages in the amount of $1 million.

**WHEREFORE**, Plaintiffs demand entry of judgment against Defendants, and each of them as follows:

1.  For $300,000 plus pre-judgment and post judgment interest;

2. For $30,000 in attorney fees incurred in attempting to established their promised security interest in ARI's assets;

3. For costs, disbursements and reasonable attorney fees incurred in this action;

4. For punitive damages in the amount of $1,000,000; and

5. Such other relief as the Court deems just and equitable.

DATED this 29 day of June, 2005.

**PURSUANT TO FED. R. CIV. PROC. 38, PLAINTIFFS HEREBY DEMAND A JURY TRIAL**

*/s/ Christopher H. Kent*
Christopher H. Kent, OSB#85253
Trial Attorney
ckent@kentlaw.com
Leslie S. Johnson, OSB#95472
Ljohnson@kentlaw.com
(503) 220-0717
(503) 220-4299 (FAX)
Attorneys for Plaintiff

23205

PAGE 15 – COMPLAINT